[DO NOT PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 22-10625

Non-Argument Calendar

_____

DALZIEL DALZEAL LLC,
d.b.a Dalziel Law Firm,
CHARLES M. DALZIEL, JR.,

Plaintiffs-Appellants,

*versus*

JOSHUA MELLBERG et al.,

Defendants,

DICKINSON WRIGHT PLLC,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:21-cv-00377-MHC

_____

Before WILSON, LUCK, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Plaintiff filed this action to collect unpaid fees incurred for legal services he provided to Chris Stanton, an individual who was named as a co-defendant with Joshua Mellberg in a Dekalb County defamation suit in 2014.[1]  Plaintiff voluntarily dismissed Mellberg from the action pursuant to a settlement agreement, and the district court subsequently dismissed Plaintiff's claims against Dickinson Wright PLLC ("Dickinson Wright"), Mellberg's attorney in the Dekalb suit, under Federal Rule 12(b)(6).  Plaintiff appeals the Rule 12(b)(6) dismissal.  After a careful review of the record and the briefing submitted by the parties, we **AFFIRM**.

---

[1]  The complaint names two plaintiffs:  Dalziel, Dalzeal LLC and Charles Dalziel. The two plaintiffs have identical interests relative to this appeal.  Accordingly, we refer to Dalziel, Dalzeal, LLC and Charles Dalziel collectively as "Plaintiff."  Likewise, we refer to Joshua Mellberg, named as an individual, and his corporate affiliate Joshua David Mellberg, LLC, as "Mellberg."

## BACKGROUND

This case arises from Plaintiff's representation of Chris Stanton in a Dekalb County defamation suit filed against Joshua Mellberg in 2014.  The suit involved allegedly defamatory statements Mellberg made in a press release. Stanton, the Dekalb County process server who distributed the press release, was named as Mellberg's co-defendant.  Dickinson Wright, via its partner David Bray, represented Mellberg in the DeKalb suit.  Plaintiff, who at the time was affiliated with the law firm Gregory, Doyle, Calhoun and Rogers, LLC, was hired to represent Stanton in the suit.  Plaintiff alleges in the complaint that Mellberg "individually through his attorneys and agents personally requested that [he] defend Stanton at the expense of himself" and his corporation Mellberg LLC.

According to Plaintiff, he performed a significant amount of work in the initial stages of the DeKalb suit.  Mellberg instructed Plaintiff to bill his time for this work at $355 per hour, which Plaintiff did.  Pursuant to their billing arrangement, Plaintiff sent Mellberg an invoice in October 2014 for $28,812.78, representing the fees incurred for services provided to Stanton through that date. Mellberg did not contest the invoice, and he told Plaintiff he would pay it.  However, no payment was forthcoming.

In June 2015, Plaintiff emailed Mellberg and Dickinson Wright about the outstanding invoice.  Plaintiff stated in the email that it was his understanding Mellberg was responsible for paying the invoice.  In response to Plaintiff's email, Mellberg likewise confirmed that he was responsible for payment.  In a separate response,

Dickinson Wright attorney Bray explained to Plaintiff that Mellberg was trying to get Dickinson Wright's and Plaintiff's invoices paid by Mellberg's insurance carrier, State Farm. Bray advised that he had suggested Mellberg make an immediate, partial payment to Plaintiff while awaiting a response from State Farm. But again, no payment was forthcoming. Plaintiff alleges that the delay hurt his standing with his own law firm and contributed to a mental health crisis that led to his hospitalization for depression.

When he returned to work after his release from the hospital, Plaintiff resumed his efforts to collect on Mellberg's outstanding invoice. In response to these efforts, Bray again affirmed to Plaintiff that Mellberg had acknowledged his responsibility for payment, and he told Plaintiff he would try to secure payment via Mellberg's new corporate counsel. Thereafter, Plaintiff sent an email to Dickinson Wright in which he offered to accept $25,000 to settle the unpaid invoice. Dickinson Wright did not accept the offer or otherwise agree to pay the $25,000, and Bray relayed to Plaintiff that he had communicated the offer to Mellberg, who apparently did not accept it either.

Meanwhile the Dekalb suit, having been dormant for some time, began to ramp up again at the end of 2016. Plaintiff claims he was required to participate in costly discovery during this phase of the suit, precipitating another email to Dickinson Wright in July 2017 requesting payment of fees in the amount of $48,161.05. Dickinson Wright advised Plaintiff that it would try to talk to Mellberg about the outstanding fees, and it directed Plaintiff to discuss the

22-10625                Opinion of the Court                5

issue with David Robinson, an employee of Mellberg's. Again, no payment was forthcoming.

Despite not being paid, Plaintiff continued his representation of Stanton in the DeKalb suit. According to Plaintiff, he could not in good faith withdraw from representing Stanton, who was facing a claim of $14 million in damages, and he believed he could eventually sue for his fees and other damages caused by the non-payment. Consequently, Plaintiff kept working on the DeKalb suit while simultaneously trying to collect his unpaid fees from both Mellberg and Dickinson Wright. During this time, Bray repeatedly acknowledged that Plaintiff should be paid by Mellberg, and he tried—unsuccessfully, and Plaintiff claims negligently—to arrange for such payment.

In March 2019, Plaintiff sent an email to Mellberg and Dickinson Wright stating that his fees and expenses, now totaling $150,000, were due immediately, and giving them notice of claims he planned to assert under the Georgia Fair Business Practices Act. A second email followed in August 2019, noting that no progress had been made on payment. Then, in January 2020, Plaintiff sent Mellberg and Dickinson Wright a statement of account indicating a balance owing of $197,000, with interest running at 1.5% per month and 18% per year if not paid within 30 days. In November 2020, Plaintiff sent Mellberg and Dickinson Wright a statement of account indicating a balance of $231,058.50. According to Plaintiff, interest is still running at 18% per year on the balance from December 2020 forward.

Plaintiff filed this action in January 2021, asserting a claim for fraud against Mellberg, a claim for negligence against Dickinson Wright, and claims for open account and account stated, promissory estoppel, and constructive fraud against both Mellberg and Dickinson Wright. Defendants moved to dismiss Plaintiff's complaint under Federal Rule 12(b)(6). Dickinson Wright argued that dismissal was warranted because Plaintiff failed to allege that Dickinson Wright promised or agreed to pay Stanton's legal fees and also because Plaintiff's claims were barred by the statute of frauds and the statute of limitations. Mellberg argued that Plaintiff's recovery of fees was barred by the statute of limitations and, moreover, that any fees should be paid to Plaintiff's former law firm rather than to Plaintiff himself.

While awaiting a ruling on the Rule 12(b)(6) motions, Plaintiff and Mellberg filed a separate, joint motion to dismiss the claims asserted against Mellberg with prejudice and to remove Mellberg from the case. The parties indicated in the motion that Plaintiff and Mellberg had settled their dispute. The court granted the motion and denied as moot Mellberg's pending Rule 12(b)(6) motion.

Thereafter, the district court granted Dickinson Wright's motion to dismiss Plaintiff's remaining claims pursuant to Rule 12(b)(6). First, the court held that Plaintiff had failed to assert a plausible claim against Dickinson Wright for open account or account stated because he did not allege a debt owed to him by Dickinson Wright, and the allegations and exhibits attached to the complaint made it clear that the debt at issue was owed by Mellberg

rather than Dickinson Wright.  Similarly, the court found that any promissory estoppel or constructive fraud claim against Dickinson Wright was precluded by the demonstrable lack of a promise or representation by Dickinson Wright to pay the fees Plaintiff incurred representing Stanton.   Finally, regarding Dickinson Wright's alleged negligence, the court noted that Georgia's version of the "good Samaritan" rule, which requires a person who voluntarily undertakes a duty to exercise ordinary care in the undertaking, generally does not apply to the contractual obligation to pay a debt.

Plaintiff appeals the dismissal of his claims against Dickinson Wright.  Plaintiff's appellate brief does not discuss or otherwise challenge the district court's ruling as to the negligence and constructive fraud claims asserted against Dickinson Wright in the complaint.  As such, we find that Plaintiff has abandoned those claims on appeal, and we do not address them further.  *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

As to his remaining claims, Plaintiff argues that:  (1) he has sufficiently stated a claim against Dickinson Wright for open account and account stated pursuant to the requirements of O.C.G.A. §§ 9-11-84 and 9-11-104 and (2) the allegations in the complaint, taken as true and construed in Plaintiff's favor, state a claim

for promissory estoppel under Georgia law.[2]  For the reasons discussed more fully below, we are unpersuaded by these arguments. Accordingly, we affirm the district court's dismissal of Plaintiff's complaint against Dickinson Wright in its entirety.

## DISCUSSION

### I.    Standard of Review

We review the district court's dismissal of Plaintiff's complaint for failure to state a claim under Federal Rule 12(b)(6) *de novo*, accepting the facts asserted in the complaint as true and then determining whether those facts are sufficient to survive dismissal. *See Jacob v. Mentor Worldwide, LLC*, 40 F.4th 1329, 1334 (11th Cir. 2022). The standard governing that inquiry, which was set forth by the Supreme Court in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), requires that a complaint "allege facts sufficient to raise a right to relief above the speculative level [and] . . . state a claim to relief that is plausible on its face." *Id.* (quotation marks and citation omitted).

When evaluating a Rule 12(b)(6) motion, the court may consider exhibits attached to the complaint. *See Turner v. Williams*, 65 F.4th 564, 583 n.27 (11th Cir. 2023) ("[C]ourts . . . consider the four corners of a complaint and the complaint's attached exhibits when analyzing a Rule 12(b)(6) motion to dismiss."). Furthermore, and relevant here, "when the exhibits contradict the general and conclusory allegations of the [complaint], the exhibits govern." *Griffin*

---

[2] The parties agree that Georgia law applies to this diversity action.

*Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007). *See also Turner*, 65 F.4th at 583 n.27 ("[A] litigant may be defeated by his own evidence, the pleader by his own exhibits when he has pleaded too much and has refuted his own allegations by setting forth the evidence relied on to sustain them." (quotation marks and citation omitted)).

## II.    Analysis

### A.    Open Account and Account Stated

Under Georgia law a plaintiff can assert a claim for "open account" or "account stated" to collect payment for goods or services he has provided to the defendant "where the price of such goods or services has been agreed upon and where it appears that the plaintiff has fully performed its part of the agreement and nothing remains to be done except for the [defendant] to make payment." *Altacare Corp. v. Decker, Hallman, Barber & Briggs, P.C.*, 316 Ga. App. 718, 719 (2012) (quotation marks omitted and alteration adopted). The claims are slightly different. An open account is an account that "has not been finally settled or closed, but is still running or open to future adjustment or liquidation." *Id.* An open account becomes an account stated when the parties "fix the amount due" and the indebted party "promises payment of the balance." *Kay Solar Sys., Inc. v. Rome Printing Co.*, 160 Ga. App. 825, 826 (1982). But both types of claims require (1) an agreement by the defendant to pay the plaintiff for the goods or services provided and (2) assent by the parties to the price and other essential terms of the agreement. *See id.* (defining an account stated in terms of an

agreement for the payment of a fixed amount); *Altacare*, 316 Ga. App. at 719 (noting that suit on an open account is not available where there is a dispute as to "assent to the services" or other terms of the contract). *See also Z-Space, Inc. v. Dantanna's CNN Center, LLC*, 349 Ga. App. 248, 251 (2019) ("Agreement as to the amount and a promise to pay are essential requisites" of a suit on account.).

Applying the above principles, the district court correctly held that Plaintiff did not plausibly state a claim against Dickinson Wright for either open account or account stated. Plaintiff states in the complaint that it was Mellberg, rather than Dickinson Wright, who agreed to pay and undertook financial responsibility for representing Stanton in the DeKalb suit. Indeed, Plaintiff specifically alleges that "Mellberg individually through his attorneys and agents personally requested that [he] defend Stanton at the expense of himself and Mellberg LLC." Plaintiff acknowledges further in the complaint that he sent his initial invoices to Mellberg, per the agreement between the parties that Mellberg would pay the fees.

The exhibits attached to the complaint confirm that the agreement between the parties called for Mellberg, rather than Dickinson Wright, to pay Plaintiff's fees. For example: (1) in an October 2014 email attached to the complaint as Exhibit A, Plaintiff confirms that Wellberg was financially responsible for Stanton's representation, (2) a June 2015 email attached as Exhibit B likewise reflects Plaintiff's understanding that Mellberg was responsible for the fees, (3) a March 2016 email attached as Exhibit I states that

Plaintiff was "assured several times by phone and email early on that Josh David Mellberg, LLC" would pay the fees for defending Stanton, and (4) in a March 2019 email attached as Exhibit K, Plaintiff references "the fees J.D. Mellberg promised to pay [him] for defending Chris Stanton" in the DeKalb suit. All these exhibits, as well as Plaintiff's own allegations, directly contravene Plaintiff's attempt to recover his legal fees directly from Dickinson Wright based on an open account or account stated theory.

Contrary to the recitation of Georgia law set out above, Plaintiff argues on appeal that he did not need to allege that Dickinson Wright agreed to pay Stanton's legal fees to recover on an open account or account stated theory. According to Plaintiff, he stated a plausible claim under both theories by filing a complaint that complied with the form set out in O.C.G.A. § 9-11-104, a Georgia statute that provides a template for asserting a claim on an account.

We are not persuaded. The Georgia statute cited by Plaintiff creates a simplified procedure to collect on an unpaid account. *See* O.C.G.A. § 9-11-84 (noting the "simplicity and brevity" of a claim on account as contemplated by O.C.G.A. § 9-11-104). But an agreement to pay for the goods or services charged to the account is an essential prerequisite to recovery under that procedure. *Z-Space*, 349 Ga. App. at 251. *See also Scott v. Prestige Fin. Serv., Inc.*, 345 Ga. App. 530, 532 (2018) ("A suit on account must be based either on an express or an implied contract."). Indeed, as explained above, a plaintiff cannot recover on an open account or account stated claim

if there are any substantive issues to be resolved about the debt at issue. *See Altacare*, 316 Ga. App. at 719. Obviously, a dispute about whether the party against whom the claim is asserted has an obligation to pay the debt on the account would constitute just such a substantive issue.

Plaintiff suggests in his appellate brief that his complaint does allege an agreement by Dickinson Wright to pay his fees. In support of this argument, Plaintiff cites a few paragraphs in the complaint that vaguely—perhaps intentionally so—assert that "defendants" engaged Plaintiff to defend Stanton and represented that "they" would pay his fees for doing so. Leaving aside the vagueness of the allegation and the oddity of an arrangement in which two entities would agree to pay substantial legal fees without any specification of how that debt would be apportioned, we will assume that Plaintiff has alleged that Mellberg and Dickinson Wright jointly promised to pay for Stanton's representation in the DeKalb suit. But even assuming that the vague statements cited by Plaintiff are sufficient to allege some sort of undefined joint payment arrangement, they are superseded by the numerous exhibits to the complaint discussed above, which clearly establish that Mellberg—rather than and not in addition to—Dickinson Wright agreed to pay for Stanton's representation in the DeKalb suit and undertook financial responsibility for Plaintiff's fees incurred therein. *See Griffin*, 496 F.3d at 1206.

In short, Plaintiff's claims for open account and account stated fail because Plaintiff does not allege, and the exhibits

attached to the complaint conflict with any purported allegation, that Dickinson Wright agreed to pay for the legal services Plaintiff provided to Stanton and thereby was obligated to pay the fees incurred on an account, open or stated.  At most, Dickinson Wright attempted to persuade Mellberg—its client and the party that in fact undertook responsibility for Stanton's representation—to fulfill its obligation to pay Plaintiff's fees.  That attempt does not equate to a promise by Dickinson Wright to directly pay Plaintiff, the absence of which forecloses Plaintiff's claims against Dickinson Wright for open account or account stated.

### B.    Promissory Estoppel

Plaintiff's promissory estoppel claim against Dickinson Wright fails for the same reason:  that is, he cannot allege a promise by Dickinson Wright to pay the legal fees he is attempting to collect in this action.  Georgia has codified the doctrine of promissory estoppel.  *See* O.C.G.A. § 13-3-44.  Pursuant to the relevant statute, the essential elements of a promissory estoppel claim include, among other things:  (1) a promise by the defendant, (2) upon which the defendant should reasonably have expected the plaintiff to rely, and (3) the plaintiff's reliance on the promise to his detriment.  *Id.  See also Hendon Properties, LLC v. Cinema Dev., LLC*, 275 Ga. App. 434, 438 (2005) (setting out the essential elements of a promissory estoppel claim under O.C.G.A. § 13-3-44).

As evidenced by Plaintiff's allegations and the exhibits to the complaint cited above, Plaintiff cannot plausibly allege the first element as to Dickinson Wright.  Plaintiff expressly acknowledges in

several paragraphs of the complaint that it was Mellberg, and not Dickinson Wright, who undertook financial responsibility for Stanton's legal representation and promised to pay Plaintiff's fees in that regard. Numerous exhibits to the complaint likewise confirm that was the agreed-upon arrangement.

As with his open account and account stated claims, Plaintiff argues in support of the promissory estoppel claim that his complaint sufficiently alleges that Dickinson Wright engaged him and promised it would pay his fees as part of a joint payment agreement. Again, Plaintiff bases this argument on vague statements in the complaint suggesting that the "defendants" collectively engaged Plaintiff to defend Stanton and represented that Stanton's defense would be at "their" expense and acknowledged that Plaintiff "should be paid."

Such vague promises generally cannot sustain a promissory estoppel claim under Georgia law. *See Georgia Inv. Int'l, Inc. v. Branch Banking & Tr. Co.*, 305 Ga. App. 673, 675 (2010) ("Promissory estoppel does not . . . apply to vague or indefinite promises[.]"). Moreover, and as discussed above, to the extent these allegations assert a promise by Dickinson Wright to pay Plaintiff's legal fees, they are directly contravened and superseded by numerous exhibits attached to the complaint conclusively showing that all the parties, including Plaintiff, understood Mellberg was responsible for paying the fees, rather than Dickinson Wright. As such, they do not state a plausible promissory estoppel claim.

22-10625               Opinion of the Court                    15

## **CONCLUSION**

For the foregoing reasons, we **AFFIRM** the district court's order dismissing Plaintiff's complaint in its entirety under Federal Rule 12(b)(6) for failure to state a claim upon which relief may be granted.[3]

---

[3] Given our affirmance of the district court's dismissal on the above-described grounds, we do not address the other grounds for affirmance raised by Defendant.