[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13278

Non-Argument Calendar

_____

JULIUS TRIMBLE,

Plaintiff-Appellant,

*versus*

FORT VALLEY STATE UNIVERSITY,
Department of Legal and Governmental Services,
VALARIE BASS,
Social and Behavioral Sciences Department Secretary,
KOMANDURI S MURTY,
Social and Behavioral Sciences Department Chair,
GREGORY FORD,
Vice Chancelor for Academic Affairs,

2                    Opinion of the Court                    22-13278

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 5:22-cv-00070-TES

_____

Before WILSON, LUCK, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Plaintiff in this *pro se* action asserts sex discrimination and retaliation claims under Title VII against his former employer Fort Valley State University ("Fort Valley").[1]  The district court dismissed Plaintiff's complaint pursuant to Federal Rule 12(b)(6) for failure to state a claim.  After a careful review of the record and the briefing submitted by the parties, we **AFFIRM**.

---

[1]  In his original complaint, Plaintiff also asserted claims against other individuals who had either supervised or worked with him at Fort Valley. Plaintiff subsequently filed a motion to amend his complaint, which the district court granted.  The amended, operative complaint names only Fort Valley as a defendant.  Accordingly, the district court did not address below, and we do not consider on appeal, the claims Plaintiff initially asserted against the individual defendants.

## BACKGROUND

This case arises from Plaintiff's employment with and eventual resignation from Fort Valley.[2]  Plaintiff does not specify the dates or terms of his employment, but we gather from the facts set out in the complaint that he was hired as a professor in Fort Valley's criminal justice department sometime before 2014, and that he worked in that position until he resigned from Fort Valley in August 2021.  Until June 2021, Plaintiff had also been serving as the program coordinator for the department.  In his position as professor and program coordinator, Plaintiff worked with Valarie Bass, the administrative assistant for the criminal justice department. The criminal justice department was itself a part of the larger Social and Behavioral Sciences Department.  Accordingly, Plaintiff was supervised by the chair of that department, Dr. Komanduri Murty, who in turn was supervised by Dr. Gregory Ford, the dean of the College of Arts and Sciences.  Both Dr. Murty and Dr. Ford are male; Ms. Bass is female.

After an instructor in the criminal justice department, Ms. Barner-Bowman, passed away unexpectedly in March 2020, Dr. Murty asked Plaintiff to advise the students who Bowman had been advising, as well as to teach her two online criminal law classes. Plaintiff alleges that, thereafter, Bass began a campaign of harassment against him that continued until he resigned from Fort Valley more than a year later.  According to Plaintiff, the harassment

---

[2] We restate the facts of this case as set out in the amended, operative complaint, which for simplicity's sake we refer to as "the Complaint."

primarily involved Bass encouraging former students of Bowman who were now being advised by Plaintiff, to send email messages to Plaintiff, copied to Dr. Murty and Dean Ford, in which emails the students requested assistance or asked questions about the courses they needed to take.  Most of the allegations in Plaintiff's complaint consist of direct quotes from these emails, accompanied by Plaintiff's commentary concerning the subject matter of the email.  As described by Plaintiff, the emails seem typical of what a college professor would expect to receive from students under his advisement.  They generally consist of a polite request for help with registration or an audit to determine whether a student is on track to graduate, albeit a few of the emails include pointed complaints about Plaintiff's failure to respond to a specific request for assistance.

But, according to Plaintiff, many of these emails reflected the first time that the student had contacted Plaintiff, and he suspected that Bass had encouraged the students to copy Dr. Murty and Dean Ford to make it appear that Plaintiff was unresponsive to students.  In short, it is Plaintiff's theory that Bass orchestrated this email campaign to undermine his reputation with Dr. Murty and Dean Ford.

Finally, on June 17, 2021, which was approximately 15 months after Plaintiff claims the email harassment had started, Dr. Murty telephoned Plaintiff and informed him that Murty was removing Plaintiff from the program coordinator position within the criminal justice department and that a new coordinator would be

named for the upcoming academic year. Dr. Murty explained that he made this decision as a result of Plaintiff's continuing bad working relationship with Bass, who had indicated that she found working with Plaintiff to be difficult and who said that she preferred to work with Dr. Craig, who was another male professor in the department. Dr. Murty further explained that Dean Ford had inquired whether Murty was going to continue Plaintiff in this position, given the issues concerning Plaintiff's unresponsiveness to students.

A few minutes after this telephone conversation, Plaintiff received a "message" from Dr. Murty indicating that, per their recent telephone conversation, Plaintiff's three-year term as program coordinator had ended and that a new coordinator would be named for the next year. Dr. Murty thanked Plaintiff for his services, which he said were "much appreciated." Plaintiff then contacted Dean Ford who indicated that Dr. Murty had stated that a change needed to be made given the ongoing tension between Plaintiff and Bass.

A few weeks later, in July 2021, Plaintiff contacted Dr. Murty and told him he could no longer work with Bass because of her continuing harassment. According to Plaintiff, Dr. Murty responded that if he did not want to work with Bass, who was the administrative assistant for the criminal justice department in which Plaintiff was employed, then Plaintiff should resign his position. At that time, Plaintiff declined to resign.

Ultimately, however, in August 2021 Plaintiff did decide to resign, which resignation was approved by Dr. Murty on August 9, 2021. Plaintiff suggested in a written letter to Dr. Murty that his resignation was orchestrated by Bass, and he indicated that he would be pursuing legal action against Fort Valley. Plaintiff received a response from Dr. Murty thanking him again for his services and stating that his contributions were appreciated "despite [his] false accusations."

As to the motivation for Bass's alleged efforts to undermine Plaintiff, Plaintiff believes that Bass preferred that Dr. Craig, a male professor in the department, act as program coordinator because Bass found it easier to get along with Dr. Craig, whom Plaintiff believes to have been her friend. Plaintiff also notes in his brief, albeit not in his Complaint, two other reasons why Bass had developed personal animosity toward him. Specifically, Bass had once requested that Plaintiff hire a "Mr. Edwards" as an adjunct professor, but Plaintiff had declined to do so, noting that this decision was up to Dr. Murty. Second, Plaintiff had declined Bass's request that her friend, Ms. Bowman, be allowed to take over the internship program.

After he resigned in August 2021, Plaintiff filed an EEOC charge against Fort Valley alleging sex discrimination and retaliation in violation of Title VII, 42 U.S.C. § 2000e, *et seq*. Plaintiff subsequently received his right to sue letter and initiated this action. Although he identifies several "discriminatory employment actions," Plaintiff's Title VII sex discrimination claim essentially boils

down to a claim that he was harassed and constructively discharged as a result of Bass's email campaign against him. Secondarily, he claims that he was retaliated against because he complained about the email harassment.

The district court dismissed Plaintiff's complaint pursuant to Federal Rule 12(b)(6) after concluding that it failed to state a plausible claim for relief under Title VII. The court noted that Plaintiff had not alleged any adverse employment action and that his complaint contained no facts to support a reasonable inference that the mistreatment he complained about had anything to do with his sex, both of which are required to sustain a claim for discrimination under Title VII. Essentially, the district court concluded, Plaintiff's complaint described a "common workplace quibble" between himself and Bass that did not constitute actionable discrimination under Title VII. As for retaliation, the court determined that Plaintiff had not plausibly alleged protected activity, which is an essential element of a retaliation claim.

Plaintiff appeals the dismissal of his complaint. Because we conclude that Plaintiff has failed to allege a plausible claim for sex-based discrimination or retaliation under Title VII, we affirm the district court's dismissal of Plaintiff's complaint.

## DISCUSSION

### I.    Standard of Review

We review *de novo* the district court's dismissal of Plaintiff's complaint for failure to state a claim under Federal Rule 12(b)(6), accepting the facts asserted in the complaint as true and applying

the same standard as the district court to determine whether those facts are sufficient to survive dismissal. *See Jacob v. Mentor Worldwide, LLC*, 40 F.4th 1329, 1334 (11th Cir. 2022). The federal rules require that a complaint contain "a short and plain statement of the claim" asserted by the plaintiff. Fed. R. Civ. P. 8(a)(2). In addition to containing well-pleaded factual allegations, a complaint must also meet the "plausibility standard" set forth by the Supreme Court in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under that standard, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation and quotation marks omitted). That is, the complaint must include facts that permit a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

As a *pro se* litigant, Plaintiff's pleadings "are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). However, this leniency does not give a court "license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted), *overruled on other grounds by Iqbal*, 556 U.S. 662. Like any other litigant, a *pro se* plaintiff must meet the pleading standards of Rule 8 and the plausibility standard of *Twombly* and *Iqbal* to avoid dismissal under Rule 12(b)(6).

## II.     Analysis

### A.     Sex Discrimination

Title VII prohibits an employer from discriminating against an employee because of the employee's "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Plaintiff's Title VII claim here is based on an allegation of sex-based discrimination. When we evaluate such claims at the summary judgment stage of a case, the analysis often involves a determination whether the plaintiff has established a prima facie case of discrimination under the *McDonnell Douglas* framework.  *See Johnson v. Miami-Dade Cnty., Fla.*, 948 F.3d 1318, 1325 (11th Cir. 2020) (noting that the *McDonnell Douglas* burden shifting framework generally applies when a Title VII claim is based on circumstantial evidence).  But as the district court correctly recognized, a complaint "need not allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case" in order to avoid dismissal under Rule 12(b)(6).  *See Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015) (quotation marks omitted).  Instead, at the Rule 12(b)(6) stage, the complaint "need only provide enough factual matter (taken as true) to suggest intentional . . . discrimination."  *Id.* (quotation marks omitted).  Applying that standard here, Plaintiff can avoid dismissal under Rule 12(b)(6) by plausibly alleging that (1) he "suffered an adverse

employment action" and (2) the action can be attributed to "intentional [sex] discrimination." *See id.*

### 1.    Adverse Employment Action

As to the question whether Plaintiff suffered an adverse employment action, an adverse action involves a "*serious and material change* in the terms, conditions, or privileges of employment" such that "a reasonable person in the circumstances would find the employment action to be materially adverse." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 921 (11th Cir. 2018) (emphasis in original) (quotation marks omitted).  Albeit he sets out several "discriminatory employee actions" taken against him, Plaintiff essentially identifies three adverse employment actions:  (1) Fort Valley's removal of Plaintiff as the program coordinator for the criminal justice department; (2) Fort Valley's failure to stop the harassment of Plaintiff by the administrative assistant for the department; (3) which harassment became so continuous it constituted a constructive discharge that forced Plaintiff to resign his professorship following Fort Valley's refusal of his demand that he no longer be required to work with the administrative assistant.[3]

We turn first to Plaintiff's claim of harassment in violation of Title VII, which continuing harassment he claims led to his constructive discharge.  A claim of harassment is actionable when the

---

[3] Plaintiff also alleges as a discriminatory employee action Dr. Murty allowing the administrative assistant, Bass, to monitor the emails that Plaintiff received from students.  This act can be folded into Plaintiff's general harassment allegation.

harassment can be deemed to have created a hostile work environment. A hostile work environment exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1152 (11th Cir. 2020) (quotation marks omitted). "Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job." *See Davis v. Legal Serv. Ala., Inc.*, 19 F.4th 1261, 1268 (11th Cir. 2021).

Plaintiff supports his hostile work environment and constructive discharge claims with allegations that administrative assistant Bass colluded with students to send emails that created a false impression that Plaintiff was unresponsive to student questions; that Bass undermined Plaintiff's reputation with his superiors, Dr. Murty and Dean Ford, by having the students copy the latter two men on these emails; that Murty and Ford did nothing to stop Bass, although Plaintiff had told them the emails were creating a false impression; and that this continuing conduct for over an 18-month period rendered his working conditions intolerable. For purposes of determining whether Plaintiff has plausibly alleged an adverse action, we will assume without deciding that the above-described conduct meets the standards applicable to a hostile work environment and a constructive discharge claim.

As to Fort Valley's decision to remove Plaintiff as program coordinator for the department, the district court concluded that

this did not constitute an adverse action because Plaintiff alleged no facts indicating that he suffered a loss of income, prestige, or other tangible impacts on his employment. It is true that Plaintiff has failed to allege that his salary was reduced as a result of his removal from the coordinator position, which apparently was a non-paid assignment. Nevertheless, we need not decide here whether this removal constituted an adverse employment action because, as explained below, Plaintiff's sex discrimination claim fails for a simple reason: he has not plausibly alleged that any of his employer's or co-employee's complained-of actions were taken because of Plaintiff's sex.

### 2.    Intentional Sex Discrimination

We affirm the district court's dismissal of Plaintiff's Title VII discrimination claims because the facts set out in Plaintiff's Complaint fail to suggest that Fort Valley's actions were motivated by intentional sex discrimination. To the contrary, both Plaintiff's Complaint and his briefing indicate his own belief that Bass's conduct toward Plaintiff was based on personal animus, and not related to the fact Plaintiff was a man. As to the genesis of her dislike for Plaintiff, Plaintiff points out that he had disappointed Bass when he refused to help a friend of hers, a Mr. Edwards, obtain a teaching position. Notably, Edwards is male. Likewise, Bass was upset with Plaintiff when he declined to allow another instructor, her friend Ms. Bowman, to take over the internship program that Plaintiff ran. Finally, Plaintiff asserts that Bass wanted him removed as the department's program coordinator because she wanted another

person to act in that role: Dr. Craig—again a man and someone who Bass got along better with than she did with Plaintiff. There is nothing in these facts to suggest that any of Bass's actions were motivated by Plaintiff's sex.

Likewise, there is nothing in the alleged facts to suggest that Dr. Murty or Dean Ford's actions were motivated by the fact that Plaintiff is male. Plaintiff complains that the latter two men did not treat him fairly because they did not exercise the necessary diligence to realize that the problems between Plaintiff and Bass were Bass's fault and that Bass was acting out of personal animosity toward Plaintiff. If that is true, it is certainly unfortunate for Plaintiff. Yet, Plaintiff adduces no facts to suggest that Dr. Murty and Dean Ford's assessment of the situation—even if incorrect, as Plaintiff argues—was influenced in any way by the fact that Plaintiff is male. It is well-established that an "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984), *abrogated on other grounds by Lewis v. City of Union, Ga.*, 918 F.3d 1213 (11th Cir. 2019). *See also Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) ("Title VII does not require the employer's needs and expectations to be objectively reasonable; it simply prohibits the employer from discriminating on the basis of membership in a protected class. We do not sit as a 'super-personnel department,' and it is not our role to second-guess the wisdom of an employer's business decisions—indeed the wisdom of them is irrelevant—as long as those decisions were not

made with a discriminatory motive.").  As such, the facts set out by Plaintiff do not plausibly allege a violation of Title VII.

In short, we affirm the district court's dismissal of Plaintiff's sex discrimination claims because Plaintiff failed to plausibly allege that any such discrimination ever occurred.

### B.    Retaliation

In addition to prohibiting discrimination based on a protected status, such as sex, Title VII also prohibits retaliation against an employee who opposes unlawful discrimination in the workplace.  *See* 42 U.S.C. § 2000e-3.  To state a claim for retaliation under Title VII, Plaintiff must allege that:  (1) he "engaged in statutorily protected conduct—that is, conduct protected by Title VII"—by opposing discrimination, (2) he suffered an adverse action, and (3) "there is some causal relationship between the two events." *Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1289 (11th Cir. 2021) (quotation marks omitted).  To support a retaliation claim, the complained-of action by the employer must be "materially adverse"—that is, it must be an action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quotation marks omitted).

Plaintiff's allegations here clearly do not suffice.  Indeed, he gives an unclear timeline of when he allegedly engaged in protected conduct and little information about the substance of that conduct.  But parsing his Complaint, we derive the following.  On January 25, 2021, a student named Juanye Samuels sent an email to

22-13278            Opinion of the Court            15

Plaintiff, and copied Dr. Murty and Bass.  In that email, the student indicated that she needed information concerning how many hours she needed to graduate.  She further stated that she had tried to contact Plaintiff, who was her advisor, but had gotten no response from him.  She requested that someone speak to her about her question.  An hour later, Samuels contacted Dean Ford.  On that same day, Samuels' mother complained to Dr. Stuart, the Vice-President of Academic Affairs to whom Dean Ford reported.  According to Plaintiff, he believed that instead of "de-escalating" the problem, Bass had encouraged the student to complain to these higher-up administrators to make Plaintiff look bad.

Then, on February 5, 2021, Samuels emailed Dr. Stuart to state that she had met with Plaintiff, but she complained that because he had not earlier given her adequate information, she would now have to graduate a semester later than planned.  She further indicated that Plaintiff had been unresponsive in the past, requiring her to contact other faculty and staff members to obtain help.  She noted that several of her classmates were struggling with the same issue.  She closed by requesting a new advisor.

Half an hour later, Dean Ford emailed Plaintiff, stating: "Dr. Trimble you assured Dr. Murty and I that these issues would not happen any further and [I] just received another.  The complaints are all about you not responding to students in a timely manner and that you do not treat them with the attention and respect they deserve.  This has also been an issue with you managing adjunct faculty with not responding timely and not being very helpful."

Dean Ford closed by seeking a meeting with Plaintiff the following Monday to address this matter.

Plaintiff avers that, upon receipt of this email, he contacted Dr. Stuart. And it is this contact that represents what Plaintiff claims was his first act of protected conduct. But Plaintiff nowhere indicates that he informed Dr. Stuart of a belief by Plaintiff that he was the victim of sex discrimination. Indeed, he offers no information as to the substance of the conversation other than to say he knew he was being "lied on" by Bass and the complaining students. In short, the Complaint fails to allege any protected conduct that occurred in connection with Plaintiff's call to Dr. Stuart.

As to his second alleged act of protected conduct, Plaintiff avers that he spoke with Human Resources Director Battle following his telephone call with Dr. Murty on June 17, 2021, in which call Murty had informed Plaintiff that he was being removed as program coordinator. But again, Plaintiff nowhere mentions expressing to Battle a concern that he was being discriminated against on the basis of sex. A reading of the concerns described by Plaintiff in his Complaint instead suggests that the conversation between Plaintiff and Battle involved Plaintiff's denial of accusations made by multiple students that Plaintiff had been unresponsive to their questions and needs. Further, the only employment action that occurred after the June 17 Human Resources meeting was taken not by Fort Valley, but by Plaintiff when he tendered his resignation on August 9.

In short, Plaintiff does not allege in his Complaint that he ever complained to his supervisors or to Human Resources about conduct that potentially violated Title VII or, more specifically, that he complained about discrimination based on his sex. Absent such allegations, Plaintiff's complaint lacks sufficient factual matter to plausibly state a claim that he opposed unlawful discrimination in the workplace. *See* 42 U.S.C. s. 2000e-3(a) (prohibiting retaliation against an employee who "has opposed any practice <u>made an unlawful employment practice</u>" under Title VII) (emphasis added); *cf. Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1311 (11th Cir. 2016) ("[A] plaintiff is required to show that she had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." (quotation marks omitted)).

Accordingly, we affirm the district court's dismissal of Plaintiff's Title VII retaliation claim.

## CONCLUSION

For the above reasons, we **AFFIRM** the district court's order dismissing Plaintiff's Title VII discrimination and retaliation claims under Federal Rule 12(b)(6) for failure to state a claim upon which relief may be granted.